As previously announced, the times will be as allotted to counsel. The first case today is number 181190, United States v. Joshua Mendoza-Maisonet. Thank you. Mr. General, good morning. Good morning. Good morning to all members of the panel as well and to all present. My name is Julio Cesar Alejandro. I will be arguing this case for Joshua Mendoza-Maisonet. This case went to trial, Your Honor. There was a verdict against Joshua Mendoza-Maisonet. Mr. Mendoza-Maisonet decided to try his cases by having made an admission to agents that a certain item… Is it an admission or admissions? Well, it was in a single interview. There were two admissions in that interview. And he admitted ownership of some of the items seized during the execution of a search warrant in the household of Co-Defendant Joshua del Valle Colon. In that admission, Mr. Joshua Mendoza, in that statement, Mr. Mendoza admitted that he was the owner of certain marijuana baggies that were seized during the execution of the search warrant. And he admitted that those first set of admissions pertains to some baggies that were seized from his pants. Pants that he was wearing the night before and that were placed besides the bed where he was resting that night when the warrant was executed. The second admission that he made was that other items in the house that were seized during the search warrant were also his, pertaining to baggies of marijuana that were seized from the dresser of the room where Joshua del Valle Colon was sleeping with his wife and his son. Now, that's the controversy here because the government and the officers expand that admission to include other items that were seized in the house that day. That day, there was a pistol and some decks of heroin that were seized from the kitchen cabinet. There were some paraphernalia that were seized from the Joshua del Valle's bedroom closet. And there was a bag that was seized in the room where Mr. Josue Mendoza was sleeping that night. All right, so the police say that he admitted to being co-owner of all of it. Yes, Your Honor, that's correct. And the jury found that to be credible? The jury found that Mr. Mendoza was guilty of the charges that they were put forward. That, yes, the jury found that Mr. Mendoza had admitted to that based on that evidence that he had admitted to the other items that were found around the house. Now, the reason why we are arguing that that was insufficient is because from the context of the admission itself and from the statement of the officers that were involved in the interviews, it was clear that Mr. Mendoza was referring to the items, the marijuana baggies that were found in his pants and in the dresser in the Joshua del Valle's. Well, it's not clear. Well, Your Honor. It's not clear based upon the statement, which is why it went to the jury. There are two different plausible explanations of what he meant when he said that. But the evidence was that Josue Mendoza was referring to the baggies of marijuana. That expansion that the officers made is because after he admitted to ownership of the baggies, Mr. Mendoza may have exonerated Co-Defendant Joshua del Valle's wife. He said that Elizabeth had nothing to do with the other items found, such as firearms, other drugs and other things, etc. What about the things found in the car? You haven't mentioned that. Well. Don't they connect? There was no. Well, they found his sneakers. Yes. Okay. So it seems to indicate that he has something to do with what was found inside the car, which were certain. There were the vials used to. Which were then found, the same vials that were found with the drugs. Inside the. Yes. Inside the blue Vitara. There were two cars that were seized on that raid. I'm sorry, on that execution. One was a white Vitara and one was a blue Vitara. Both were stolen. Huh? Both were stolen, right? Yeah, both were stolen cars. Those were found outside, parked outside the residence of Mr. Joshua del Valle Colon. And they were actually the object, the initial object of the search warrant. No, that's not correct either. I'm sorry. The search warrant included also the house. Yes. And because Joshua del Valle was seen or observed carrying a gun into the house. Right. So the blue Vitara, which is one of the vehicles had in the back, in the rear portion of the vehicle, it had a pair of sneakers and some empty vials that were identical to the vials that were found inside the bag that was in the kid's room. With the drugs. With the drugs. The difference was that the vials found in the blue Vitara were empty. Whereas the vials inside the bag were already packaged with crack cocaine inside of them. So based on that evidence, and the reason why we are arguing that that evidence is insufficient, is because there was no evidence at all that Mr. Mendoza may have anything to do with the car, except that his sneakers were found and there was no explanation by the government as to how the sneakers got there. But isn't it enough that the sneakers were there and that they belonged to him? They got there somehow, and there were reasonable inferences that he put them there. Well, what we're saying is not a reasonable inference that he put them there. Those sneakers could have found their way there because Joshua del Valle and Mr. Jose Mendoza are close friends. And there was evidence that Mr. Mendoza used to have a tendency to stay the night over at del Valle's house. I'm sorry, they were close friends, but he wasn't allowed to go into the kitchen or the bathroom. Yes, Your Honor. That was a statement made by Mr. Mendoza during trial. Not that he was not allowed. That he felt compelled to ask permission before going into places that he felt were within the couple's purview of intimacy, of expectation of privacy. Counsel, do you want to, before you run out of time, do you want to say something about your sentencing arguments? I think the statement that you're referring to is a good transition to that because the court found that your client, in applying a two-point obstruction of justice enhancement, found your client was lying when he made those statements. Isn't that correct? Yes. The government asked the court verbally during the sentencing hearing to impose a two-point increase in the offense level because of obstruction of justice. That was not mentioned in the PSR. You say that was not mentioned in the PSR. No. In the PSR, the finding was that there was no indication of obstruction of justice. So the government asked for that the first time at sentencing. That's correct. Is there anything wrong with that? Sorry? Is there anything wrong with doing that? Well, there was no notice. There was no previous notice of the enhancement that was being sought. We addressed the enhancement during the sentencing hearing. Let me ask you, you were asking for a four-point reduction for a minor role in the offense. Is that correct? That's correct. As I read the sentencing transcript, although you asked for that, the judge doesn't seem to say a word about it. Are you arguing that that was a procedural, unreasonable mistake of the judge? Despite the fact that you were very explicit in seeking it, the judge never says a word about it. Is that correct? The judge doesn't mention it during the transcript, Your Honor. He was more focused on the basis for the enhancement based on the obstruction of justice and the sentencing hearing basically had to do with that. That was the theme there during that sentence hearing. Can we read his analysis on the obstruction of justice as, in effect, a repudiation of your request for a minor role adjustment? Well, not necessarily because he may have been a minor participant, and even if the court found that he was untruthful as to his ownership of the items, we insisted during the sentencing hearing that what he testified about was that he was not the owner of those items, and basically that he had no control over that household, that it was Joshua del Valle's household, that it was his province and his dwelling. So Mr. del Valle and Mr. Joshua Del Valle had no say on where the items would be hidden or what the items would contain. Are there no further questions? My time is up. Thank you. Mr. Parrish, good morning. Good morning, Your Honor. I just learned something. I didn't realize that was up. I've never seen that before. That's true. I'm sorry. Good morning, Your Honors. I should let you introduce yourself. At some point I would like you to respond. This is on the sentencing issue. You should deal with the other issues as well, but since we were talking about it, it is striking to me that although defense counsel specifically asked for a minor rule adjustment, which could mean a four-point reduction in the total offense level, the judge doesn't seem to say a word about that. And we do have law that says that if an issue is explicitly raised at sentencing, it's a mistake for the court not to deal with it. Why shouldn't we remand for resentencing in light of the court's failure to directly address that request from defense counsel? I'd be glad to address that, Your Honor, just to make sure I have a proper introduction. May it please the Court, Antonio Perez on behalf of the United States. We would argue that in the judge applying the obstruction of justice enhancement, he made a specific finding that Mr. Mendoza lied when he indicated that he didn't know what the context, what were the contents of the backpack. And if that was a lie, he took the stand and he said, I don't know what the contents of the backpack was. The jury, in fact, found that he did and that he possessed all those items, all the contraband in the backpack. Then there is no indication that he would have a minor role because the items found in the backpack were the most dangerous weapon. The Kel-Tec rifle that was loaded was found in the backpack. Forty vials filled with crack cocaine were found in the backpack. So implicitly by applying the obstruction of justice enhancement and finding that specific misrepresentation that he didn't know the four-point reduction as well. As to the sufficiency argument, the government in this case presented ample evidence that Mr. Mendoza did, in fact, knowingly possess all the contraband that were found in this case. Let's start with the fact that he was found in the room where that backpack was found that contained the loaded rifle, the 40 capsules filled with crack cocaine, and empty baggies consisting of drug paraphernalia. In addition, there are a lot of other circumstances that indicate that that backpack belonged to him. One of the things is, as Judge Torrea was pointing out, the capsules filled with crack cocaine were exactly the same as the ones found in one of the stolen Suzuki Vidadas, where right next to shoes that he in fact admitted when he took the stand were his, there were empty vials that were identical to those that were filled with the crack cocaine in the backpack. In addition, the backpack contained a toothbrush, indicating that it would belong to an overnight guest such as Mr. Mendoza. And in addition, it wasn't just his presence in the room, but he had made himself comfortable in the room. All of his stuff was in the room. His sneakers were at the foot of the bed. His pants were folded neatly on a table. He had his watch, his necklace, and Percocet pills all neatly put on a dresser. So he had made himself comfortable in this room. In addition, the room was clearly a toddler's room. Everything other than Mr. Mendoza's stuff was clothes and toys that would pertain to a one- to two-year-old. And so it was much more reasonable for the jury to infer that that backpack belonged to Mr. Mendoza and he had brought it as an overnight guest than that the kid's own parents would leave a loaded rifle right in their toddler's room. And in addition to that, when he testified, he put forth a lot of facts that he was very close to Mr. Valle and Ms. Colon, the owners of the residence. He had stayed over numerous times. He had known them since high school. In fact, he was dating Ms. Colon's niece, and he would meet up with her often at the residence, and he would stay over. So it wasn't the first time that he had stayed over. And he felt so comfortable in their house that he had actually smoked marijuana in their living room that same day. And that's all without even looking at his admissions. Add to that the fact that both PRPD Officer Perez and HSI Officer Del Valle testified that he verbally admitted to them to owning all the items in the house in connection with Mr. Valle and that we have a written admission, which would indicate that he admitted to all of this stuff. I understand that Mr. Mendoza has a separate interpretation. He put forth that interpretation to the jury, and the jury rejected it. And it's not this court's role to second-guess that credibility determination of the jury. So at this point, I'd like to pause to see if the court has any questions. If not, we would rest on our brief and ask that the district court's judgment and sentence be affirmed. Thank you. Thank you.